In the United States Court of Appeals for the Tenth Circuit

————————————

RACHEL BRAYMAN, et al.,

Plaintiffs-Appellees,

v.

KEYPOINT GOVERNMENT SOLUTIONS, INC.,

Defendant-Appellant.

————————————

On Appeal from the United States District Court
For the District of Colorado
The Honorable William J. Martinez
D.C. No. 18-cv-00550-WJM-NRN

————————————

**DEFENDANT-APPELLANT'S OPENING BRIEF**

————————————

Respectfully submitted,

Margaret Parnell Hogan
Jennifer S. Harpole
Thomas W. Carroll
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
303.629.6200
mphogan@littler.com
jharpole@littler.com
tcarroll@littler.com

*Counsel for Defendant-Appellant*
*KeyPoint Government Solutions, Inc.*

Jacqueline E. Kalk
LITTLER MENDELSON, P.C.
80 South 8th Street, Suite 1300
Minneapolis, MN 55402
612-313-7645
jkalk@littler.com

Everett Clifton Martin
LITTLER MENDELSON, P.C.
633 West Fifth Street
Los Angeles, CA 90071
213-443-4212
cmartin@littler.com

**ORAL ARGUMENT IS REQUESTED**

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 28(a)(1) and 10th Cir. R. 26.1, the undersigned counsel for Peraton Risk Decision Inc., formerly named KeyPoint Government Solutions, Inc., a nongovernmental corporate party, states that by that certain Amended and Restated Certificate of Incorporation dated with effect November 1, 2018, the name of KeyPoint Government Solutions, Inc. was changed to Perspecta Risk Decision Group Inc. Perspecta Risk Decision Group Inc. changed its name to Peraton Risk Decision Inc. effective July 7, 2021. Peraton Risk Decision Inc. is a wholly owned subsidiary of KGS Holding Corp., which is in turn a wholly owned subsidiary of Peraton Solutions Inc., a privately held, Nevada corporation and a subsidiary of Peraton Corp., a Delaware corporation. No publicly traded company holds more than ten percent (10%) of the equity interests of Peraton Corp.

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ..........................................................i

STATEMENT OF PRIOR OR RELATED APPEALS ............................................1

GLOSSARY ....................................................................................................1

STATEMENT OF JURISDICTION ...................................................................3

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................................4

STATEMENT OF THE CASE............................................................................6

     I.     An FLSA case morphs into a hybrid case with challenges to Rule 23 certification and arbitrability....................................................6

     II.     KeyPoint's operations. ............................................................8

     III.     Plaintiffs' claims...................................................................9

     IV.     California Named Plaintiffs' motion for class certification. ..............10

     V.     KeyPoint's opposition to the motion for class certification................12

     VI.     The district court's class certification order. .....................................14

     VII.     KeyPoint moves to compel arbitration as to Arbitration Plaintiffs' state-law claims. ................................................................16

SUMMARY OF ARGUMENT............................................................................20

     I.     The district court erred in certifying the California Rule 23 class. ....................................................................................................20

     II.     The district court erred when it denied KeyPoint's motion to compel arbitration...............................................................................23

ARGUMENT ...................................................................................................24

     I.     Standards of review. ..........................................................................24

II.    The district court abused its discretion when it misstated and misapplied the burden of proof concerning the role of pleadings under Rule 23(a) and (b)(3)...............................................25

       A.    The district court was required to go beyond the pleadings' allegations to conduct a rigorous analysis. .............25

       B.    The district court was required to analyze the elements of the claims but failed to do so. ...................................26

       C.    The district court failed to recognize the elements of Plaintiffs' California claims. ....................................28

       D.    The district court's failure to apply a rigorous analysis beyond the pleadings infects its entire Rule 23 decision. ........30

III.   The district court erred in finding a common issue as required by rule 23(a). ....................................................32

       A.    California Named Plaintiffs failed to prove a common issue for meal periods and rest breaks. ...................35

       B.    California Named Plaintiffs failed to prove a common issue for overtime wages...........................................37

IV.    The district court erred in finding that common issues predominate over individual issues as required by Rule 23(b)(3).............................................................39

V.     The district court did not have the power to decide arbitrability. ......43

VI.    California class members who signed before January 13, 2020 are required to arbitrate because the Pending Litigation Exception does not apply to them. ...................................488

CONCLUSION ...................................................................51

ORAL ARGUMENT STATEMENT .........................................51

CERTIFICATE OF COMPLIANCE ......................................54

CERTIFICATE OF DIGITAL SUBMISSION ...........................55

CERTIFICATE OF SERVICE .................................................56

10TH CIR. R. 28.2 ATTACHMENT (ORDER ON PENDING
MOTIONS)....................................................................................................Attached

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Honda Motor Co. v. Allen*,
600 F.3d 813 (7th Cir. 2010) ..................................................37

*Belnap v. Iasis Healthcare*,
844 F.3d 1272 (10th Cir. 2017) ...........................................24, 44

*Berger v. Home Depot USA, Inc.*,
741 F.3d 1061 (9th Cir. 2014), *overruled on other grounds*,
*Microsoft v. Baker*, 137 S. Ct. 1702 (2017) ...............................28, 40

*Brinker Rest. Corp. v. Sup. Ct.*,
53 Cal. 4th 1004 (2012) ........................................29, 30, 36, 42, 43

*Brown v. Fed. Express Corp.*,
249 F.R.D. 580 (C.D. Cal. 2008) ..........................................28, 35

*CGC Holding Co., LLC v. Broad & Cassel*,
773 F.3d 1076 (10th Cir. 2014) .....................24, 25, 27, 28, 31, 40, 42

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013) .....................................................32, 39, 40

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ....................................................................48

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ....................................................................26

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ......................................................25

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018) ...............................................................48

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011) ...............................................................26, 27

*Flores v. Supervalu, Inc.*,
   509 F. App'x 593 (9th Cir. 2013)........................................................43

*Gelder v. Coxcom Inc.*,
   696 F.3d 966 (10th Cir. 2012).............................................................4

*Gomez v. J. Jacobo Farm Labor Contractor, Inc.*,
   334 F.R.D. 234 (E.D. Cal. 2019) ........................................................28

*Gonzalez v. Millard Mall Servs.*,
   281 F.R.D. 455 (S.D. Cal. 2012)........................................................37

*Green v. Fed. Express Corp.*,
   614 F. App'x 905 (9th Cir. 2015)........................................................41

*Harrel's LLC v. Chaparral Energy, LLC (Naylor Farms, Inc.)*,
   923 F.3d 779 (10th Cir. 2019)......................................................35, 36

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019)................................................................44, 45

*In re AutoZone, Inc., Wage & Hour Emp't Practices Litig.*,
   289 F.R.D. 526 (N.D. Cal. 2012), *aff'd*, 789 Fed. App'x 9, 2019
   WL 4898684 (9th Cir. Oct. 4, 2019)...................................................42

*In re Bank of Am. Wage & Hour Emp't Litig.*,
   286 F.R.D. 572 (D. Kan. 2012)......................................................42-43

*Kamar v. Radio Shack Corp.*,
   254 F.R.D. 387 (C.D. Cal. 2008) ........................................................30

*Koike v. Starbucks Corp.*,
   378 F. App'x 659 (9th Cir. 2010)........................................................42

*Mevorah v. Wells Fargo Home Mortg. (In re Wells Fargo Home
   Mortg.)*,
   571 F.3d 953 (9th Cir. 2009)........................................................41, 42

*Novic v. Credit One Bank, N.A.*,
   757 F. App'x 263 (4th Cir. 2019)........................................................46

*Nutraceutical Corp. v. Lambert*,
   139 S. Ct. 710 (2019)....................................................................4

*Rent-A-Center, W., Inc. v. Jackson*,
  561 U.S. 63 (2010).....................................................................6, 45, 46, 48, 52

*Shook v. El Paso Cty.*,
  386 F.3d 963 (10th Cir. 2004)..............................................................15, 26

*Stiller v. Costco Wholesale Corp.*,
  298 F.R.D. 611 (S.D. Cal. 2014), *aff'd*, 673 F. App'x 783 (9th Cir.
  2017), *abrogated on other grounds by Campbell v. City of Los
  Angeles*, 903 F.3d 1090 (9th Cir. 2018).........................................28, 29

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442, 136 S. Ct. 1036 (2016)...............................................27

*Vallario v. Vandehey*,
  554 F.3d 1259 (10th Cir. 2009).........................................................25

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011)............................. 4, 22, 23, 25, 26, 32, 33, 34, 38, 39, 40

*Walker v. Life Ins. Co. of the Sw.*,
  953 F.3d 624 (9th Cir. 2020)............................................................28

*Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*,
  725 F.3d 1213 (10th Cir. 2013)................................................26, 38, 40

*Weitz Co., LLC v. Mid-Century Ins. Co.*,
  181 P.3d 309 (Colo. App. 2007) .......................................................49

*West v. Prudential Sec., Inc.*,
  282 F.3d 935 (7th Cir. 2002).............................................................27

**Statutes**

28 U.S.C. § 1331 .....................................................................................3

28 U.S.C. § 1367 .....................................................................................3

Cal. Lab. Code § 512 ............................................................................29

Cal. Lab. Code § 510 ............................................................................28

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ............................*passim*

Federal Arbitration Act....................................................................1, 3, 6, 46

Rules Enabling Act, 28 U.S.C. § 2072(b) ................................................34

**Other Authorities**

Fed. R. App. P. 4(b)(1) .............................................................................4

Fed. R. Civ. P. 15.....................................................................................49

Fed. R. Civ. P. 23..............................................................................*passim*

Wage Order 4, 8 Cal. C. Reg. § 11040....................................................28

## STATEMENT OF PRIOR OR RELATED APPEALS

1. *KeyPoint Government Solutions, Inc. v. Brayman, et al.*, Tenth Circuit Case No. 22-702 (since converted to Case No. 22-1168).

## GLOSSARY

1. **Arbitration Plaintiffs** – California plaintiffs who signed Arbitration Agreements subject to KeyPoint's motion to compel arbitration at issue in Case No. 22-1118.

2. **Arbitrator Decides Clause** – shorthand for the Arbitration Agreement's clause that "the Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement." *E.g.*, App. Vol. II at 325 § 1.

3. **California Named Plaintiffs –** Adriana Ponce and Dana McCarthy, who are named Plaintiffs who worked in California, opted into the FLSA

collective and moved for Rule 23 certification of the California state-law claims.

4. **California Plaintiffs –** 64 plaintiffs who opted into the FLSA collective who worked in California.

5. **FAA** – Federal Arbitration Act

6. **FI** – Field Investigator

7. **FLSA** – Fair Labor Standards Act

8. **FM** – Field Manager

9. **OTC** – Off-the-clock

10. **Pending Litigation Exception –** shorthand for the Arbitration Agreement's clause that "this Agreement does not apply to any currently pending litigation between Employee and [KeyPoint] as of the date this Agreement is signed by Employee, and this agreement does not apply to any class, collective, or other representative action proceeding that is currently pending as to which you are a current or purported class member as of the day this Agreement is signed by Employee." *E.g.*, App. Vol. II at 325 § 2.

## STATEMENT OF JURISDICTION

The United States District Court for the District of Colorado had jurisdiction over this matter under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, 28 U.S.C. § 1331, and 28 U.S.C. § 1367. Plaintiffs allege failure to pay overtime as required by the FLSA, plus California state-law wage and hour violations.

This Court's interlocutory appellate jurisdiction derives from Federal Rule of Civil Procedure 23(f) and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16(a)(1). As to the Case No. 22-1168 portion of the appeal (Rule 23[1] class certification), the district court certified a Rule 23 class in its March 31, 2022 Order on Pending Motions. App. Vol. XXX at 7888-7896. KeyPoint timely petitioned for permission to appeal under Federal Rule of Civil Procedure 23(f) and the Court granted KeyPoint's petition. App. Vol. XXX at 7937-38.

As to the Case No. 22-1118 portion of the appeal (arbitration), the district court denied KeyPoint's motion to compel arbitration as to certain members of the Rule 23 California class. App. Vol. III at 609-617. KeyPoint filed a motion to clarify, which the district court construed and ruled upon as a motion to reconsider. App. Vol. III at 618-625 (motion); App. Vol. XXX at 7896-7901 (order). The district court issued its Order on Pending Motions reconsidering the motion to compel arbitration

---

[1] All references to "Rule 23" in this brief are to Federal Rule of Civil Procedure 23.

on March 31, 2022. App. Vol. XXX at 7896-7901. The notice of appeal was timely[2]

filed in accordance with Federal Rule of Appellate Procedure 4(b)(1) on April 14,

2022. App. Vol. XXX at 7902-7904.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      **Reliance on pleadings for Rule 23 motions.** The Supreme Court

directed in *Dukes v. Wal-Mart* that certification of a Rule 23 class requires more than

a "pleadings standard." The district court provided no analysis of the factual disputes

between the parties in resolving the Rule 23 motion, but instead relied upon the

pleadings. Did the district court abuse its discretion when it relied on pleadings,

rather than the evidence before it, in granting certification under Rule 23?

2.      **Rigorous analysis.** The United States Supreme Court and this Circuit

require a district court to conduct a "rigorous analysis" in determining whether a

party has met the Rule 23 requirements of both a "common issue" and the

predominance of common issues over individualized issues. The district court stated

that it reviewed the evidence, but did not cite to, or discuss any of the evidence

offered by the parties. Did the district court abuse its discretion in not conducting a

---

[2] The law is well established that after a motion to reconsider the time for appeal runs from the later order, as long as the motion to reconsider was within the original time to appeal, which KeyPoint's motion was. *E.g.*, *Gelder v. Coxcom Inc.*, 696 F.3d 966, 968-69 (10th Cir. 2012); *see also Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 717 (2019) (a timely motion for reconsideration renders an otherwise final decision not final for purposes of appeal).

rigorous analysis in ruling on California Named Plaintiff's motion for class certification?

3.    **Predominance.** The district court found that common questions predominated over individualized issues, but failed to recognize that the California meal and rest-period claims it certified for class treatment would be dominated by individualized issues. Particularly, California law permits employees to miss meal and rest breaks voluntarily, so long as such break opportunities are "provided." Here, the evidence showed employees arranged their own schedules, and the employer policy provided for meal and rest breaks, so the question of whether an employee missed a meal or rest break due to employer interference would necessarily be idiosyncratic. Therefore, the "common issue" identified by the district court did not support the elements of the meal and rest period claim. Did the district court abuse its discretion in holding that common questions predominated over individualized issues?

4.    **Delegation to the arbitrator.** Parties can delegate to the arbitrator threshold issues of arbitrability if the agreement is clear and unmistakable. The parties agreed the arbitrator has the exclusive authority to decide, among other things, the applicability of the agreement, and the language of the delegation clause is substantively identical to the clear and unmistakable delegation clause the

Supreme Court enforced in *Rent-A-Center, West, Inc. v. Jackson*. Did the district court have the power to decide arbitrability?

5. **The arbitration agreement's exception for currently pending litigation.** The obligation to arbitrate claims under the arbitration agreement does not apply to litigation "currently pending," when employees signed the agreement, including currently pending class or collective actions to which the employee was a "current or purported class member." The Rule 23 class and its state claims were not part of this case until January 13, 2020, when Plaintiffs moved for leave to add them. Are California class members who signed arbitration agreements before January 13, 2020 required to arbitrate those claims?

## STATEMENT OF THE CASE

I. **An FLSA case morphs into a hybrid case with challenges to Rule 23 certification and arbitrability.**

This is a consolidated appeal involving two distinct grounds for appeal: whether the district court erred in granting class certification under Rule 23, and whether the district court erred in permitting California plaintiffs to avoid their obligation to arbitrate their claims against the company under the FAA. Named Plaintiff Rachel Brayman ("Brayman") filed this lawsuit on March 8, 2018 solely as an FLSA collective action on behalf of a putative nationwide class of Field Investigators ("FIs"), alleging failure to pay overtime wages. App. Vol. I at 46-61. Nearly two years later, on January 13, 2020, after the parties had completed

extensive discovery, Plaintiffs moved to amend their complaint to add California state-law claims on behalf of a Rule 23 class of California FIs, including claims for alleged unpaid overtime under state law, meal and rest-period violations, failure to provide accurate itemized wage statements, and failure to timely pay final wages. The district court granted that amendment on July 9, 2020 and also ruled that these new California claims "relate back" to the original complaint filing date. App. Vol. II at 491-496.

During the FLSA collective-action notice period, notice was sent to current and former employees. Of these, 64 employees from California opted in to the then FLSA-only case ("California Plaintiffs"). These California Plaintiffs responded to written discovery regarding their claims, several were deposed, and California Named Plaintiffs Adriana Ponce and Dana McCarthy ("California Named Plaintiffs") used that evidence in support of their motion to certify a Rule 23 class. On March 31, 2022, the district court granted the California Named Plaintiffs' Rule 23 motion, which KeyPoint now appeals.

Of the 64 California Plaintiffs, a number had signed arbitration agreements and are subject to KeyPoint's motion to compel arbitration, the denial of which is also the subject of this appeal. KeyPoint moved to compel arbitration of the California state-law claims made by employees who signed arbitration agreements between March 8, 2018 (the date Brayman filed her FLSA claims) and January 13,

2020 (the date Plaintiffs first raised California state law claims in their motion to amend their Complaint) ("Arbitration Plaintiffs"). The district court denied KeyPoint's motion to compel the claims of the Arbitration Plaintiffs and denied its motion for clarification of the same. KeyPoint appeals that denial here.

## II. KeyPoint's operations.

KeyPoint provides specialized investigative services to government agencies. App. Vol. XXX at 7659. KeyPoint's Field Investigators work remotely from their homes according to their own self-selected schedules and are managed remotely by Field Managers ("FMs"). App. Vol. XXX at 7659. An FM oversees the performance of the FIs assigned to his or her area. *Id.* The California Plaintiffs worked under the supervision of at least 15 different FMs. App. Vol. XXIV at 6210.

KeyPoint's policies require all employees to record all hours worked. App. Vol. XXX at 7661-7663. Plaintiffs affirmed their compliance with the timekeeping requirements upon submission of their work time each week. *Id.* at 7663-7666. Additionally, FIs were free to arrange their schedule to take a meal or rest break at any time during the workday to accommodate non-work-related activities, such as picking up children from school. App. Vol. XXIV at 6222-23 (63:23-64:20), 6240-41 (131:23-132:19). The employee handbook explicitly provided for meal periods and rest breaks, in compliance with California law.[3] *See* App. Vol. XXIV at 6253-

---

[3] KeyPoint's California meal-period policy provides for an uninterrupted unpaid

55, Vol. XXX at 7752. California FIs certified the accuracy of their time entries, including meal periods and rest breaks, each week.[4]

### III. Plaintiffs' claims.

Plaintiffs' First Amended Complaint alleges, on the one hand, a nationwide collective action under the FLSA for failure to pay FIs overtime (Count I), and on the other, a class action on behalf of a class of California FIs for failure to pay overtime (Count II), failure to provide accurate itemized wage statements (Count III), failure to provide rest breaks and meal periods (Count IV), failure to pay final wages (Count V), and Unfair Competition (Count VI). App. Vol. II at 507-514. Counts II through VI are based on California law, and Plaintiffs admit that Counts III, V, and VI are derivative of the allegations in Counts II and IV. App. Vol. XXX at 7841.

---

meal period of at least 30 minutes in a workday lasting more than five hours, and a second uninterrupted unpaid meal period if an employee works more than 10 hours in a workday. *See* App. Vol. XXIV at 6253-55. KeyPoint's policy requires "uninterrupted and duty-free" meal periods, and FIs must notify supervisors of missed breaks. *Id.* The handbook expressly provides rest breaks, noting: "Field or other remote employees are responsible for scheduling and coordinating their day in a manner to allow them to take breaks in compliance with this policy." *Id.*

[4] App. Vol. IV at 0985, Vol. XXIV at 6214-15 (35:13-36:4), 6216 (40:4-10), 6218-19 (47:16-48:8), 6260 (62:3-20), 6262-63 (102:20-103:19), 6264 (108:1-17), 6269 (49:12-22).

**IV.    California Named Plaintiffs' motion for class certification.**

The California Named Plaintiffs' motion alleged only one common policy: that KeyPoint "maintained a common policy and practice of forcing its investigator employees to work off-the-clock across the United States, including in California" through "routine over-assignment of work and strict minimum performance expectations."[5] App. Vol. XXX at 7687.

The California Named Plaintiffs' motion was so dependent on this "common issue" that the factual section for the meal and rest-period claims consisted of ***one sentence***. App. Vol. XXX at 7696. With respect to the meal and rest-period claim, the California Named Plaintiffs' motion relied solely on interrogatory answers from the self-selected group of 64 California Plaintiffs. *Id.* (citing App. Vol. XXIII (Exhibit 58)). However, the California Named Plaintiffs' evidence for this "common issue" consists of cursory, template-generated interrogatory answers whereby the California Plaintiffs (mostly) stated, in summary fashion, that they were "forced" to miss breaks because of their heavy workloads—although some California Plaintiffs later admitted that they in fact took their breaks ***notwithstanding*** these allegedly

---

[5] The California Named Plaintiffs restated this theory in their reply: "Plaintiffs in this case may proceed as a class action because their claims are tied together by common policies and practices—Defendant's over-assignment of work and minimum performance expectations that drove Plaintiffs to underreport their hours worked." App. Vol. XXX at 7833.

heavy workloads.[6] App. Vol. XXIV at 6240-41 (131:16-132:19), 6262 (102:7-10), 6275 (89:4-22).

The California Named Plaintiffs' argument offered no additional facts beyond the template interrogatory answers to support class certification of the meal and rest-break claims. App. Vol. XXX at 7700-01. The California Named Plaintiffs offered no evidence to prove that the interrogatory answers of the California Plaintiffs were representative of the experiences of absent class members. Further, the California Named Plaintiffs offered no expert or statistical evidence to support their contentions of a heavy workload. Nor did the California Named Plaintiffs offer any facially unlawful meal-period policies or rest-break policies. They offered no evidence concerning anyone other than the California Plaintiffs or how they would offer a representative sample at trial, nor how they could even do so. The California Named Plaintiffs relied exclusively on the minimum performance expectations and that the California Plaintiffs (and only the California Plaintiffs) claim to have missed some unidentified breaks on some unidentified days—even though for the most part those same California Plaintiffs also certified that they took those breaks.

Accordingly, there is little in the California Named Plaintiffs' motion to suggest how they will prove KeyPoint's liability to absent class members for alleged

---

[6] It should be noted that the performance metrics have nothing to do with the meal period and rest-break claims.

meal and rest-break violations. The California Named Plaintiffs relied exclusively on interrogatory answers from a self-selected group of California Plaintiffs (versus a randomly selected group) for evidence of "common issues" regarding the meal and rest break claims. The California Named Plaintiffs further asserted that common issues drove the overtime claims due to the "over-assignment" theory. App. Vol. XXX at 7700 at 7699. However, Plaintiffs' motion largely ignored the individualized issues inherent in their claims: i.e., ***specifically why*** FIs may have missed meal or rest breaks, whether each FI worked overtime, how much overtime each FI worked, and whether the FI's manager ***knew*** the FI worked overtime or missed breaks that the FIs did not report.

## V.     KeyPoint's opposition to the motion for class certification.

KeyPoint opposed the motion to certify, submitting significant evidence through multiple exhibits. App. Vol. XXX at 7753-7770. First, KeyPoint established its plainly lawful time recording, meal-period, and rest-break policies. App. Vol. XXIV at 6253-55. KeyPoint submitted more than 500 wage statements showing payments to Plaintiffs for overtime work. App. Vol. XXV-XXVI at 6288-6864. KeyPoint also offered evidence showing that the California Plaintiffs worked for at least 15 different Field Managers. App. Vol. XXIV at 6211.

KeyPoint submitted deposition testimony from California Plaintiffs showing in no uncertain terms their ability to arrange their schedules and take breaks. App.

Vol. XXIV at 6222-23 (63:23-64:20), 6240-41 (131:23-132:19). For example, Named Plaintiff Ponce testified that she could arrange her work appointments around doctors' appointments. *Id.* Plaintiff Quintana testified that he could go pick up kids from school, and he would arrange his work appointments to permit taking his kids to school. App. Vol. XXIV at 6240-41 (131:16-132:19) (admitting to daily taking care of children, cooking breakfast, and transporting children during work hours). Plaintiff Norton admitted that if she elected to skip a meal break, it was entirely her choice. App. Vol. XXIV at 6262 (102:7-10). Further, some California Plaintiffs contradicted their own interrogatory answers during depositions. App. Vol. XXIV at 6275 (89:4-22) (Plaintiff Mendez admitted to receiving two rest breaks per day in contradiction of her prior sworn interrogatory answers, which claimed she was "forced … to miss legally required rest periods").

KeyPoint also pointed to California Named Plaintiffs' evidence that supported KeyPoint's compliance with respect to the California Plaintiffs. For example, even within California Named Plaintiffs' evidence, putative class member Cracchiolo states that he took "an uninterrupted meal break of 60 minutes once per work day," and 15-minute rest breaks. App. Vol. XXIII at 5923-24.

## VI.  The district court's class certification order.

The district court certified the class based on a very brief analysis of the evidence with respect to the Rule 23 requirements of commonality and the predominance of common issues. This is the entirety of the district court's analysis:

> Plaintiffs argue that their unpaid overtime, meal and rest break, waiting time penalty, itemized wage statement, and unfair competition claims are common to the class and will be proved through common evidence. (ECF No. 355 at 14–18.) For example, Plaintiffs contend that
>
>> whether the class worked unpaid overtime as a result of KeyPoint's over-assignment of work and minimum performance expectations will be established through the testimony of representative Plaintiffs and their common evidence of hours worked in KeyPoint's software systems; whether KeyPoint knew or should have known about this unpaid overtime will be established through common evidence of Plaintiffs' complaints to [FMs] and Human Resources and the company's intentional over-assignment of work; and Plaintiffs' will prove that KeyPoint stood idly by and through common evidence that it did not compensate Plaintiffs for their unrecorded overtime hours.
>
> (*Id.* at 14 (collecting citations to record).) Plaintiffs likewise contend that they will establish their itemized wage statement claims and meal and rest break claims through KeyPoint's uniform wage statements and Plaintiffs' testimony, respectively. (*Id.* at 16–17.) Additionally, Plaintiffs argue these common issues predominate over individual issues because KeyPoint's purported unlawful policies are common to the class as a whole. (*Id.* at 19–20.)
>
> In response, KeyPoint argues that Plaintiffs "cannot show any common issue of liability for classwide resolution 'in one stroke,' or that predominates over individual issues." (ECF No. 358 at 7.) According to KeyPoint, Plaintiffs' claims are untenable because Plaintiffs' evidence fails to establish that KeyPoint had common unlawful policies requiring off-the-clock work or prohibiting Plaintiffs from taking required meal and rest breaks. (*Id.* at 7–13.) Instead, KeyPoint argues

that Plaintiffs will be forced to establish liability on an individualized basis and that class certification is therefore not appropriate because individual inquiries will predominate. (*Id.* at 7–13.)

It may well be that Plaintiffs will be unable to prevail on their California claims at trial. ***However, at this stage of the litigation, the Court must confine itself to questions relating to whether common questions drive the resolution of Plaintiffs' claims, and as a consequence "accept[s] the substantive allegations of the complaint as true."*** *Shook*, 386 F.3d at 968.

After fully considering the parties' arguments and evidence, as well as the case law cited by each side, the Court concludes that Plaintiffs have adequately established that their claims depend upon common contentions that are of such a nature that they are capable of classwide resolution, and that such issues predominate over individual inquiries. After all, the proposed class members' claims arise from the same alleged course of conduct, and raise common issues of law and fact. [Citations.]

To the extent that the jury determines that Plaintiffs have failed to establish the existence of the alleged unlawful policies, then all of the class members' claims would fail in unison. The complexity of proof is a problem that Plaintiffs will have to address in presenting their case on the merits, but it does not negate predominance of the existence of central, common issues that will drive the resolution of liability as to all Plaintiffs. [Citation.]

App. Vol. XXX at 7891-93 (emphasis added).

In fact, the district court ignored the ***evidence*** cited by KeyPoint, focusing instead on KeyPoint's ***arguments*** without any discussion of the evidence KeyPoint submitted to support the same. Second, the California Plaintiffs' evidence, i.e. the interrogatory answers from select opt-in FLSA class members, provided little detail, whereas KeyPoint, by comparison showed through evidence that California Plaintiffs took ample breaks or testified to varied personal reasons for skipping

breaks. *See, e.g.*, App. Vol. XXIII at 5880, 5923-24, 6059-60; Vol. XXIV at 6240-41 (131:16-132:19), 6275 (89:4-22).

KeyPoint's evidence established that its meal-period and rest-break policies were facially lawful, that putative class members were given ample opportunity to schedule and take breaks, and that putative class members certified that they took their meal periods and rest breaks in their time sheets each week. Accordingly, any claims of meal period or rest break violations would necessarily be idiosyncratic, not systemic, and class treatment would effectively do nothing other than deprive KeyPoint of its defenses to individual claims. The district court did not address this evidence other than to say it chose to credit the ***allegations*** in the complaint and the California Named Plaintiffs' motion. The district court did not identify the elements of the causes of action, nor any method for trying all of the meal and rest-break claims together, instead deferring to the California Named Plaintiffs' "conten[tion] that they will establish their . . . meal and rest break claims through . . . Plaintiffs' testimony." App. Vol. XXX at 7892.

## VII.  KeyPoint moves to compel arbitration as to Arbitration Plaintiffs' state-law claims.

In October 2015, KeyPoint and its employees began entering into Arbitration Agreements. App. Vol. II at 315 ¶ 3. As relevant here, KeyPoint entered into Arbitration Agreements with FLSA opt-in Plaintiffs who worked for KeyPoint in California. *Id.* at ¶ 4. KeyPoint and the Arbitration Plaintiffs agreed to resolve in

arbitration all disputes arising out of the employment relationship. Specifically, the Arbitration Agreements require the arbitration of disputes regarding "compensation, classification, minimum wage . . . overtime, breaks and rest periods" and claims under the FLSA or state laws addressing similar subject matter. App. Vol. II at 324-478 § 1 (agreements). The Agreements also require signatories to proceed on an individual basis as opposed to a class or collective basis. *Id.* § 5.

Under the "Pending Litigation Exception" the Arbitration Agreements do not apply to currently pending litigation between the employee and KeyPoint as of the date the employee signed the agreement, or to any pending class or collective action to which individuals may be a current or purported class member as of the date of the employee signed the agreement. *E.g.*, App. Vol. II at 325 § 1. The parties to the arbitration agreements (each Arbitration Plaintiff and KeyPoint) also agreed to delegate threshold issues to the arbitrator through an "Arbitrator Decides Clause." To the extent there is any dispute regarding the "interpretation, applicability, enforceability, or formation of [the] Agreement[s]," the Agreements reserve all such disputes for decision by the arbitrator. *Id.* at § 2.

The Arbitration Plaintiffs in question opted in to the FLSA collective action before Plaintiffs moved for leave to amend the complaint. *See generally* App. Vol. II at 314-478 (Bowen declaration and agreements); App. Vol. II at 557. Those

individuals are listed below, along with the date on which each person executed his or her Arbitration Agreement.

| Plaintiff Name | Date of Signing |
| --- | --- |
| Monique Anderson | March 23, 2018 |
| Timothy Anderson | April 23, 2018 |
| Sondra Antonio | June 5, 2018 |
| Jose Benitez | August 18, 2018 |
| Timothy Benter | July 26, 2018 |
| Lynette Buggs | June 15, 2018 |
| Michael Cameron | August 18, 2018 |
| Jacob Carroll | May 2, 2018 |
| Chancey Dariso | March 25, 2018 |
| Wanda Doolittle | July 2, 2018 |
| Ceola Farmer | July 12, 2018 |
| Kimberley Folkes-Dunkley | September 18, 2018 |
| Hans Gillinger | February 8, 2018 |
| Russell Haag | July 30, 2018 |
| Gregory Harrell | May 7, 2018 |
| John Haynes | April 28, 2018 |
| Joseph Jaramillo | May 7, 2018 |
| Eric Jones | July 17, 2018 |

| | |
|---|---|
| Christopher Magdael | July 5, 2018 |
| Rashida McElvene | May 1, 2018 |
| Dustin Moe | June 12, 2018 |
| Rebecca Mojarro | July 3, 2018 |
| Michael Norton | August 7, 2018 |
| Otilia Peralta | March 22, 2018 |
| Spencer Qattan | April 28, 2018 |
| Maribel Ramirez | July 27, 2018 |
| Endy Sevilla | April 24, 2017 |
| Monique Slater | January 9, 2019 |
| Johnna Smith | October 11, 2018 |
| Marika Staton | May 21, 2018 |
| Richard Thomas | July 30, 2018 |

*See Id.*[7] Notably, each of the Arbitration Plaintiffs agreed to bring any claims against KeyPoint in arbitration long ***before*** Plaintiffs, for the first time, sought leave to amend their Complaint to assert California state-law claims.

After Plaintiffs filed their amended complaint, KeyPoint moved to compel arbitration for the Arbitration Plaintiffs' state-law claims. App. Vol. II at 554-569.

---

[7] Plaintiffs Gillinger and Sevilla signed their agreements before March 8, 2018 and were ultimately stricken from the litigation. There is no argument that the Pending Litigation Exception applies to them.

The district court denied the motion to compel arbitration on February 4, 2021. App. Vol. III at 609-617. In its order denying the motion, the district court rejected the Arbitrator Decides Clause, interpreted the Pending Litigation Exception itself, and determined that the Pending Litigation Exception does apply to 31 California Plaintiffs' state-law claims. *Id.* at 613-616. On March 3, 2021 (30 days after the denial of the motion to compel arbitration), KeyPoint moved to clarify the order denying its motion to compel arbitration. App. Vol. III at 618-625. The district court construed the motion as a motion to reconsider and ruled on it in the same March 31, 2022 Order on Pending Motions as the class-certification order. App. Vol. XXX at 7896-7900. The district court clarified its interpretation that the Pending Litigation Exception covers not only FLSA opt-in plaintiffs, but also California class members who chose not to opt in to the FLSA action and therefore have only state-law claims. *Id.* at 7899. KeyPoint timely appealed. App. Vol. XXX at 7902-04.

## SUMMARY OF ARGUMENT

**I.      The district court erred in certifying the California Rule 23 class.**

Plaintiffs seek to recover backpay for work that FIs did not report to their employer (i.e., "off-the-clock" work), missed meal periods and rest breaks that they did not report to their employer, and penalties premised on those allegations. Plaintiffs identify one factual issue that they contend is common: KeyPoint requires employees to meet performance metrics, thereby allegedly "over-assigning work" to

FIs, which purportedly causes them to under-report work time. App. Vol. XXX at 7687, 7696. The district court certified this case as a class action for damages under Rule 23(b)(3), finding that this allegation constituted a common issue that predominated over questions concerning the individualized issues that would need to be resolved relative to the individual class members' alleged claims and damages.

The district court made these findings despite Plaintiffs' failure to present any evidence that issues relating to individual recovery could be measured on a classwide basis. Indeed, the district court effectively acknowledged that they could not be, finding that the jury would simply determine whether Plaintiffs "establish[ed] the existence of the alleged unlawful policies," which "will drive the resolution of liability as to all Plaintiffs." App. Vol. XXX at 7893.

The district court's analysis was required to go further and if it had done so it would necessarily have reached the conclusion that this court should reach: that common issues cannot "predominate" over individual issues on this record. The district court did not explain at all how the establishment of the alleged "unlawful policy" of assigning an allegedly heavy workload—which is not unlawful at all— would "drive the resolution of liability as to all Plaintiffs." As a threshold matter, the amount of work performed or performance expectations do not dictate an outcome on the meal and rest break claims. The record before the district court showed that employees worked remotely and arranged their own schedules, including breaks.

App. Vol. XXIV at 6222-23 (63:23-64:20), 6240-41 (131:23-132:19). Questions concerning whether employees actually received the opportunity to take breaks— notwithstanding a heavy workload—go directly to liability (whether employees were required to miss breaks), not merely damages (based on how many breaks employees were required to skip).

Even if California Named Plaintiffs proposed some scientific means for justifying representative testimony, no mathematical formula or sampling device or survey can determine whether a particular employee had the opportunity to take all of his or her breaks. Adopting a "trial by formula" approach would sacrifice KeyPoint's right to due process and change the substantive rights of the parties. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011) ("*Dukes*").

Fundamentally, the district court failed to follow the direction of the Supreme Court in *Dukes*, which holds that plaintiffs may not merely rely on their pleadings, but must ***prove*** that common questions exist with evidence. Here, the evidence fails to show an issue that can be determined with common proof. Indeed, the very proof California Named Plaintiffs rely on the most—interrogatory answers from California Plaintiffs—is ***not*** common, but rather, individual-by-individual. The interrogatory answers themselves prove that liability will necessarily be individualized, not least ***because some of the answers show employees could take***

**breaks.** *See, e.g.,* App. Vol. XXIII at 5867, 5903, 5923, 6029, 6037, 6046, 6051, 6054-55, 6064, 6073, 6077, 6094, 6107, 6116.

Additionally, the district court erred by finding that common issues will predominate over individualized issues. That simply cannot be the case if Plaintiffs are put to (as they must be) proving the elements of their claims. Affirming the district court's ruling would suggest to courts that certification of California meal and rest break claims may be based on a farrago of irrelevant evidence, contradictory class-member testimony, and mere pleadings allegations. *Dukes* does not permit this kind of winking at the record.

## II.  The district court erred when it denied KeyPoint's motion to compel arbitration.

The district court also erred in denying KeyPoint's motion to compel arbitration as to the Arbitration Plaintiffs. The Arbitration Agreement clearly and unmistakably delegated the gateway question of arbitrability to the arbitrator. The district court had "no power" to disregard the clause and interpret the agreement itself. *See, e.g.*, App. Vol. II at 325. The decision is contrary to both this Court's and the Supreme Court's precedent and should be reversed. The district court also erred in how it interpreted the so-called Pending Litigation Exception and the decision also should be reversed for that reason, as well.

# ARGUMENT

The issues presented in this consolidated appeal fall into two principal buckets: KeyPoint appeals the Rule 23 class certification and KeyPoint separately appeals the denial of its motion to compel arbitration as to the Arbitration Plaintiffs. The specific issues on appeal are addressed in turn.

## I.    Standards of review.

In the Tenth Circuit, an error as to the legal standard under Rule 23 constitutes an abuse of discretion. *CGC Holding Co., LLC. v. Broad & Cassel*, 773 F.3d 1076, 1085-86 (10th Cir. 2014) ("The district court abuses its discretion when it misapplies the Rule 23 factors—either through a clearly erroneous finding of fact or an erroneous conclusion of law—in deciding whether class certification is appropriate."). The Court's review of an order granting class certification is "de novo to the extent [it] must determine whether the district court applied the correct standard." *Id.* Accordingly, this Court's review is de novo with respect to all questions of law. To the extent the district court made specific findings of fact, these would be reviewed for clear error. *Id.*

The standard of review for an order denying a motion to compel arbitration is de novo. *E.g.*, *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1279 (10th Cir. 2017).

**II. The district court abused its discretion when it misstated and misapplied the burden of proof concerning the role of pleadings under Rule 23(a) and (b)(3).**

**A. The district court was required to go beyond the pleadings' allegations to conduct a rigorous analysis.**

It has been well-settled by the United Supreme Court and this Circuit that courts must rigorously assess the Rule 23 requirements, make findings of fact, and assess the merits of a plaintiff's claims to the extent those claims overlap with Rule 23's requirements. *CGC Holding Co.*, 773 F.3d at 1087 (10th Cir. 2014) ("[I]t is impractical to construct 'an impermeable wall' that will prevent the merits from bleeding into the class certification decision to some degree"); *Vallario v. Vandehey*, 554 F.3d 1259, 1265 (10th Cir. 2009) ("The district court cannot conduct this searching inquiry with a clearly erroneous view of the alleged facts."). Put another way, "it is not correct to say a district court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (emphases in original).

In *Dukes*, a case that focused on the applicable standard involved in Rule 23(a)'s commonality requirement, the Supreme Court emphasized the necessity of a "rigorous analysis" that "will entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 131 S. Ct. at 2551. Here, however, the district court merely "accept[ed] the substantive allegations of the complaint as true." App. Vol.

XXX at 7892, failing to rigorously scrutinize the ample record evidence contradicting those allegations, and ignoring the Supreme Court's decision to rigorously scrutinize the record before it.

As support for its ruling, the district court relied on the 2004 decision in *Shook v. El Paso County*, 386 F.3d 963, 968 (10th Cir. 2004), which, in turn, relied on the Supreme Court's decision in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), for the proposition that the district court "must accept the substantive allegations of the complaint as true." *Shook*, 386 F.3d at 968. Until the Supreme Court's decision in *Dukes*, many courts had interpreted *Eisen* as espousing a pleading standard. In *Dukes*, however, the Supreme Court specifically recognized *Eisen*'s previous misapplication and confirmed that "Rule 23 does not set forth a mere pleading standard." *Dukes*, 131 S. Ct. at 2551-52 & n.6; *see also Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1217 (10th Cir. 2013) ("[T]he district court has an independent obligation to conduct a 'rigorous analysis' before concluding that Rule 23's requirements have been satisfied. Often that analysis requires looking at the merits of a plaintiff's claims.").

## B. The district court was required to analyze the elements of the claims but failed to do so.

The Supreme Court has also made clear, "[c]onsidering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton*

*Co.*, 563 U.S. 804, 809 (2011); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455, 136 S. Ct. 1036, 1046 (2016) ("Whether and when statistical evidence can be used to establish classwide liability will depend on the purpose for which the evidence is being introduced and on 'the elements of the underlying cause of action.'"); *CGC Holding Co.*, 773 F.3d at 1087 ("[G]iven our obligation to ensure that the district court did not err in conducting its rigorous analysis, we must *characterize* the issues in the case as common or not, and then *weigh* which issues predominate. Here, that task requires us to **survey the elements** . . . to consider (1) which of those elements are susceptible to generalized proof, and (2) whether those that are so susceptible predominate over those that are not.") (italics in original, bold added; citations omitted).

This is true even where the district court faces complicated factual questions that could be resolved by a jury or answered later. "A district judge may not duck hard questions by observing that each side has some support, or that considerations relevant to class certification also may affect the decision on the merits. Tough questions must be faced and squarely decided, if necessary by holding evidentiary hearings and choosing between competing perspectives." *West v. Prudential Sec., Inc.*, 282 F.3d 935, 938 (7th Cir. 2002) (reversing class certification).

Here, the district court was required to conduct a thorough survey of the elements in deciding whether to certify California meal and rest break claims, as

well as off-the-clock claims. *See, e.g.*, *Gomez v. J. Jacobo Farm Labor Contractor, Inc.*, 334 F.R.D. 234, 257-262 (E.D. Cal. 2019); *Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 586 (C.D. Cal. 2008).[8] It failed to do so. The Tenth Circuit requires at least an analysis of the substantive elements generally. *CGC Holding Co.*, 773 F.3d at 1087.

### C. The district court failed to recognize the elements of Plaintiffs' California claims.

California Named Plaintiffs assert causes of action for failure to pay overtime, failure to provide rest breaks and meal periods, and claims entirely derivative of those theories. App. Vol. XXX at 7841. The district court here offered no discussion or holdings regarding the elements of Plaintiffs' claims.

The overtime claim is asserted as an "off-the-clock" ("OTC") claim under California Labor Code § 510 and Wage Order 4, 8 Cal. C. Reg. § 11040. App. Vol. II at 506 (¶ 54). "To prove an OTC claim, a plaintiff must demonstrate (1) he or she performed work, for which (2) he or she did not receive compensation, and of which

---

[8] The Ninth Circuit requires its district courts to consider each element of each underlying cause of action *separately* in deciding whether to certify a class under California's employment laws. *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014), *overruled on other grounds*, *Microsoft v. Baker*, 137 S. Ct. 1702 (2017); *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 630 (9th Cir. 2020) ("A district court's assessment of predominance 'begins, of course, with the elements of the underlying cause of action.'") (quoting *Erica P. John Fund, Inc.*, 563 U.S. at 809).

(3) the employer was aware or should have been aware." *Stiller v. Costco Wholesale Corp.*, 298 F.R.D. 611, 628 (S.D. Cal. 2014), *aff'd*, 673 F. App'x 783 (9th Cir. 2017), *abrogated on other grounds by Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018).

The elements of a meal period claim are that "[a]n employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." Cal. Lab. Code § 512. Under California Supreme Court precedent, "[a]n employer's duty with respect to meal breaks under both section 512, subdivision (a) and Wage Order No. 5 is an obligation to provide a meal period to its employees. **The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a <u>reasonable opportunity</u> to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so**." *Brinker Rest. Corp. v. Sup. Ct.*, 53 Cal. 4th 1004, 1040 (2012) (emphasis added).

The employer's rest break obligation is to "authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." *Brinker*, 53 Cal. 4th at 1028. The *Brinker* court expounded upon the "authorize and permit" obligation:

> An employer is required to authorize and permit the amount of rest break time called for under the wage order for its industry. If it does not—if, for example, it adopts a uniform policy authorizing and permitting only one rest break for employees working a seven-hour shift when two are required—it has violated the wage order and is liable.

*Id.* at 1033.

Here, the district court did not discuss any of the legal elements of the claims at issue. Implausibly, the district court cited to *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008) for the proposition that a "consistent employer practice . . . could be a basis for consistent liability." However, the *Kamar* court went on to ***contrast*** the facts in that case with "wage and hour classes where key facts could not be discerned through routine business records, such as where claims to overtime compensation depended on employees' actual duties which differed among employees within the class, ***or where claims to unpaid meal and rest break premiums depended on whether employees actually took the mandated break***." *Kamar*, 254 F.R.D. at 402 (emphasis added).

### D. The district court's failure to apply a rigorous analysis beyond the pleadings infects its entire Rule 23 decision.

As shown above, the district court made a serious error of law when it applied the wrong standard of scrutiny—a pleadings standard—to the California Named Plaintiffs' ***entire*** motion to certify a class under Rule 23(a)(2) and (b)(3).[9] This is an

---

[9] It is otherwise unclear exactly how the district court applied this erroneous pleadings standard to its analysis of the factual record. If one were to accept the

incorrect standard and contrary to established law. The district court's bald statement that it "fully consider[ed] the parties' arguments and evidence" does not find support in its order, and thus should not be credited. The district court cited exclusively to the parties' **arguments**, rather than to their **evidence**, in determining whether to certify the class.

Consequently, the district court's factual and legal analysis of the entire class-certification motion, from commonality to predominance, is tainted by an insufficient lack of scrutiny. For this reason, this Court should not afford the district court the deference usually granted in applying an "abuse of discretion" standard. *CGC Holding Co.*, 773 F.3d at 1086 ("*[a]s long as the district court applies the proper Rule 23 standard*, we will defer to its class certification ruling") (emphasis added). KeyPoint submits that this Court, instead, should apply a *de novo* standard of review to Plaintiffs' entire motion for class certification because of the district court's failure to apply the correct legal standard.

---

district court's statement on its face, however, it would not have considered record evidence that was contrary to the factual assertions in the pleadings. For example, in Paragraph 65 of the First Amended Complaint, Plaintiffs allege that "Defendant knowingly failed to provide Plaintiff Ponce, Plaintiff McCarthy, and the California Rule 23 Class with meal periods as required by law, and knowingly failed to authorize and permit Plaintiff Ponce, Plaintiff McCarthy, and the California Rule 23 Class to take rest periods as required by law." App. Vol. II at 509. Ponce, however, later testified she was provided with the opportunity to arrange her schedule however she desired, including taking breaks during the workday. App. Vol. XXIV at 6222-23 (63:23-64:20). Ponce also testified that she had no reason to dispute her timesheets showing her breaks being taken. App. Vol. XXIV at 6215 (36:5-17).

Nonetheless, as will be demonstrated below, even if this Court were to apply a deferential standard to the district court's commonality and predominance findings, it should still reverse the district court's decision to certify this class under Rule 23(a)(2) and (b)(3).

## III. The district court erred in finding a common issue as required by rule 23(a).

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (citing *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979)). To come within the exception and maintain the class action, Plaintiffs must affirmatively demonstrate their compliance with Rule 23. *Comcast Corp.*, 133 S. Ct. at 1432 (citing *Dukes*, 131 S. Ct. at 2551-52).

In *Dukes*, the Supreme Court clarified Rule 23(a)'s "commonality" standard. Before *Dukes*, some courts had treated commonality as an afterthought, easily met and rarely a meaningful burden to certification. *See e.g.*, *Dukes*, 131 S. Ct. at 2562 (Ginsberg, J. concurring in part and dissenting in part) (noting the district court's statement that "one significant issue common to the class may be sufficient to warrant certification"). The majority in *Dukes* dismissed the notion that a class plaintiff might satisfy this requirement by a mere pleading standard, pointing out that "any competently crafted class complaint literally raises common 'questions.'" *Id.* at 2551 (citation omitted). Here, for example, it is not enough to claim that all the

putative class members suffered violations of California's meal-period law. Rather, the necessary common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Any dissimilarities in the putative class are what impede the generation of such common answers. *Id.*

In *Dukes*, the Court also ruled that Rule 23 and due-process considerations require that class actions for damages must be prosecuted under Rule 23(b)(3). Previously, some courts had held that damages claims that were "incidental to requested injunctive or declaratory relief" could be resolved as part of a class action for injunctive or declaratory relief under Rule 23(b)(2). *Id.* at 2560. The Court rejected this approach. As the Court unanimously held, "Wal-Mart is entitled to individualized determinations of each employee's eligibility for backpay." *Dukes*, 131 S. Ct. at 2560. The Court rejected the plaintiff's proposed plan to determine damages through a "sample set," characterizing it as "Trial by Formula." *Id.* at 2561. In doing so, the Court observed that using liability considerations for one plaintiff or set of plaintiffs, however statistically valid, would inevitably change the substantive rights of the parties in violation of the Rules Enabling Act.

> We disapprove that novel project. Because the Rules Enabling Act forbids interpreting Rule 23 to "abridge, enlarge or modify any substantive right," 28 U.S.C. § 2072(b); *see Ortiz*, 527 U.S., at 845, 119

S. Ct. 2295, a class cannot be certified on the premise that Wal-Mart will not be entitled to litigate its statutory defenses to individual claims.

*Dukes*, 131 S. Ct. at 2561.

Trying this case as currently certified will similarly enlarge or modify the substantive rights of the parties in this case. Here, it is impossible to determine, except individually, through testimony, (1) whether class members worked unreported overtime; (2) whether their supervisors knew they worked unreported overtime; (3) whether class members were ***required*** to miss meal or rest breaks; or (4) whether their supervisors knew they were forced to miss meal or rest breaks and did not report them. To adopt Plaintiffs' approach inescapably means that either some employees will recover where they are not entitled to recover through "representative testimony," or KeyPoint will be forced to defend ***liability*** as to every employee in a series of mini-trials that would render certification meaningless. This would be true even if Plaintiffs could show that any sampling technique for representative testimony was statistically valid. In short, Plaintiffs' scheme sacrifices KeyPoint's right to contest these issues individually, or else renders class certification to be, effectively, joinder.[10]

In the end, California Named Plaintiffs must "do more than merely identify 'a common contention'; instead, that 'common contention . . . must be of such a nature

---

[10] Note that the California Named Plaintiffs' motion was premised on the assertion that joinder would be impracticable. App. Vol. XXX at 7697-98.

that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Harrel's LLC v. Chaparral Energy, LLC (Naylor Farms, Inc.)*, 923 F.3d 779, 789 (10th Cir. 2019).

### A. California Named Plaintiffs failed to prove a common issue for meal periods and rest breaks.

The California Named Plaintiffs plainly failed to identify any common question tethered to the elements of their meal-period and rest-break claims. As noted above in Section II.C, the California Named Plaintiffs' meal and rest-break claims require each putative class member to prove that breaks were ***interfered with***. California Named Plaintiffs' mere claims that they were "over-assigned work" cannot fashion a bridge to "common proof"; even if they had heavy workloads, that does not establish any violation of meal and rest breaks, let alone KeyPoint's knowledge of any missed breaks. *Brown*, 249 F.R.D. at 586) ("Because FedEx was required only to make meal breaks and rest breaks available to Plaintiffs, Plaintiffs may prevail only if they demonstrate that FedEx's policies deprived them of those breaks. Any such showing will require substantial individualized fact finding.").

Here, it is uncontroverted that FIs arranged their own schedules and could arrange to take breaks regardless of workload. Accordingly, even if KeyPoint had hypothetically given a class member 15 hours of work per day—a "heavy workload" to be sure—nothing necessarily kept these class members from working five hours,

taking a 30-minute meal break, then working another five hours, then taking another 30-minute meal break, then working a final five hours. Accordingly, there is no necessary relationship between a heavy workload and a missed meal period where employees set their own schedules. Even if some employees felt that their "heavy workload," combined with a desire to accommodate other obligations, "caused" them to work through a meal period, that would not mean KeyPoint is liable. *Brinker*, 53 Cal. 4th at 1040. Thus, the evidence set forth by the California Named Plaintiffs, and cited by the district court,[11] does ***nothing*** to establish liability, and is not remotely close to "resolv[ing] an issue that is central to the validity of each one of the claims in one stroke." *Harrel's LLC*, 923 F.3d at 789.

Finally, the very fact that Plaintiffs' proffered evidence came not from policies, but rather from inconsistent—and at times contradictory—non-representative interrogatory answers lacking any scientific basis for presuming representation, demonstrates a lack of commonality. *See Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 817 (7th Cir. 2010) (holding that district court was required to conduct *Daubert* analysis at class-certification stage to determine if expert analysis

---

[11] Even the California Named Plaintiffs' self-selected (as opposed to randomly selected) group of 64 California opt-ins who submitted interrogatory answers showed that some ***did*** receive and take meal periods or rest breaks, and none provided details of a theoretical grand scheme to deprive employees of meal periods or rest breaks. Neither did any provide any specifics regarding whether they were "forced" to miss breaks based on personal factors, rather than exclusively work-created factors.

was viable as a basis for certification). There was no evidence whatsoever showing a common scheme to deprive employees of breaks. Moreover, California Plaintiffs' own evidence showed that they admitted that they received their breaks. *See Gonzalez v. Millard Mall Servs.*, 281 F.R.D. 455, 463-64 (S.D. Cal. 2012) ("Because of the varying declarations and conflicting facts of the putative class members, Plaintiffs have failed to show that Defendants had a common policy that 'prevented' employees from taking meal breaks and/or failed to 'permit and authorize' employees to take rest breaks under Rule 23(a)(2)."). Accordingly, the district court relied on nothing more than pleadings and arguments, rather than evidence, to find a "common question" connecting common evidence to the elements of the claim.

**B.     California Named Plaintiffs failed to prove a common issue for overtime wages.**

KeyPoint does not here argue that the California Named Plaintiffs failed to *identify* a common *theory* on the overtime claim, i.e., whether KeyPoint's performance expectations required employees to work off the clock. KeyPoint disputes that the California Named Plaintiffs carried their burden of ***proof*** that a common issue ***in fact*** exists. *Dukes*, 564 U.S. at 350-352.

California Named Plaintiffs provided no evidence that off-the-clock work was common to the class. Nor did they provide any evidence of a facially unlawful written policy—their allegation was, at bottom, that KeyPoint applied its otherwise lawful policies in an unlawful manner. California Named Plaintiffs provided the

Court with **no** basis for extrapolating from the experiences of the self-selected group of 64 California Plaintiffs to the remainder of the class. California Named Plaintiffs provided no surveys, no statistical analysis, no expert testimony, no common unlawful policy, and no corporate-level instructions to FMs to encourage employees to work off the clock. California Plaintiffs' individual stories about individual interactions with supervisors do not establish commonality. California Named Plaintiffs have not shown that they can prove, through common evidence, that **all** employees were subjected to a **policy** of not reporting overtime, especially where KeyPoint produced more than 500 wage statements showing payment of overtime to the California Plaintiffs. The district court cannot simply disregard KeyPoint's evidence that employees were authorized to work, and were paid for, overtime work, in contravention of Plaintiffs' theory that employees were uniformly subjected to a common policy of required off-the-clock overtime work. *Wallace B. Roderick Revocable Living Tr.*, 725 F.3d at 1218 ("it is not the defendant who bears the burden of showing that the proposed class does not comply with Rule 23, but [rather] the plaintiff who bears the burden of showing that the class does comply with Rule 23") (quoting *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006)). California Named Plaintiffs failed to carry their burden.

**IV.    The district court erred in finding that common issues predominate over individual issues as required by Rule 23(b)(3).**

In addition to proving commonality under Rule 23(a), California Named Plaintiffs must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b). California Named Plaintiffs chose to move for certification under Rule 23(b)(3), by which parties seeking to recover damages may bring a class action. *See* Fed. R. Civ. P. 23(b)(3); *Comcast Corp.*, 133 S. Ct. at 1428. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

As the Supreme Court noted in *Comcast Corp.*, the requirements to certify a class action for damages under Rule 23(b)(3) are ***at least as rigorous, if not more rigorous***, as those required for class actions generally:

> If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623-624, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). Rule 23(b)(3), as an "adventuresome innovation," is designed for situations "in which 'class-action treatment is not as clearly called for.'" [*Dukes*], 131 S. Ct. at 2558 (*quoting Amchem,* 521 U.S., at 614-615, 117 S. Ct. 2231, 138 L. Ed 2d 689). That explains Congress's addition of procedural safeguards for (b)(3) class members beyond those provided for (b)(1) or (b)(2) class members (e.g., an opportunity to opt out), and the court's duty to take a "close look" at whether common questions predominate over individual ones. *Id.*, at 615, 117 S. Ct. 2231, 138 L. Ed. 2d 689.

*Comcast Corp.*, 133 S. Ct. at 1432.

Predominance requires that "common questions subject to generalized, classwide proof *predominate* over individual questions." *CGC Holding Co.*, 773 F.3d at 1087 (emphasis in original). To determine whether Plaintiffs meet this requirement, the district court "must *characterize* the issues in the case as common or not, and then *weigh* which issues predominate." *Id.* (emphasis in original). In other words, the predominance prong asks whether the common issues are more prevalent or important than the non-common individual issues. *Id.* This Court has cautioned, "[a]lthough 'individualized monetary claims belong in Rule 23(b)(3),' predominance may be destroyed if individualized issues will overwhelm those questions common to the class." *Wallace B. Roderick*, 725 F.3d at 1220 (internal and trailing citations omitted). Similarly, the Ninth Circuit has counseled, "[t]o meet this requirement, the common questions must be 'a significant aspect of the case . . . [that] can be resolved for all members of the class in a single adjudication.'" *Berger*, 741 F.3d at 1068.

The "common issue" identified by the district court here—alleged heavy workloads that allegedly caused under reporting of work time—cannot "outweigh" the key inquiries for each and every class member on an individual basis. Clearly, California Named Plaintiffs' meal-period and rest-break claims require the individual inquiry: "Why did you miss your breaks?" It would ***not*** be sufficient to answer, "Because KeyPoint gave me a heavy workload," because that will not

address whether the employee was free to take breaks notwithstanding that heavy workload. There is no element of a meal-period or rest-break claim that can be advanced by the purported common thread of this class action. *Green v. Fed. Express Corp.*, 614 F. App'x 905, 907-08 (9th Cir. 2015) ("Green has failed to provide a common method of proof that would require FedEx to compensate its employees on a class-wide basis. Therefore, individual issues concerning whether an employee actually worked during a meal break, and brought it to the attention of FedEx, would predominate.").

Similarly, California Named Plaintiffs' off-the-clock overtime claims require the individual inquiries: "Why did you work off the clock?" and "Did KeyPoint know you worked off the clock?" Though California Named Plaintiffs will point to the common performance standards that they allege motivated employees to work off the clock, it is an abuse of discretion to focus on "that policy to the near exclusion of other factors relevant to the predominance inquiry." *Mevorah v. Wells Fargo Home Mortg. (In re Wells Fargo Home Mortg.)*, 571 F.3d 953, 959 (9th Cir. 2009). Here, the district court focused on the alleged common question, but did not ***weigh*** the common issue of performance metrics against the individual issues arising out of each FI's supervisor's knowledge or lack of knowledge of off-the-clock work. *CGC Holding Co.*, 773 F.3d at 1087; *see also Koike v. Starbucks Corp.*, 378 F. App'x 659, 661 (9th Cir. 2010) (finding district court did not abuse its discretion in finding

that "individualized factual determinations were required to determine whether class members did in fact engage in OTC work and whether Starbucks had actual or constructive knowledge of the OTC work performed"); *In re AutoZone, Inc., Wage & Hour Emp't Practices Litig.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012), *aff'd*, 789 Fed. App'x 9, 2019 WL 4898684 (9th Cir. Oct. 4, 2019) (finding common issues did not predominate where there was no common answer to the question of why off-the-clock work occurred). Indeed, there was no representative evidence to weigh and thus no reliable basis for determining if ***any*** of the absent class members worked off the clock, as there is no policy requiring or even encouraging off-the-clock work (quite to the contrary), and therefore Plaintiffs' proof will necessarily require testimony from each class member's supervisor as to their knowledge.

Notably, prior to this district's court's decision, there was only one prior published decision by a district court in the Tenth Circuit that cited to *Brinker.* In that case, *In re Bank of America Wage & Hour Employment Litigation*, 286 F.R.D. 572 (D. Kan. 2012), the district court in Kansas rejected class certification of a California meal-period class, holding that "individualized inquiries would necessarily be required to establish the Bank's liability to each member of the class. It is undisputed that employees in California may choose to continue working in lieu of taking a meal period, so long as the employer itself relinquishes control over the employee during

that time." *Id.* at 591-92. That analysis is exactly right.[12] In California, employees may choose to skip their breaks. *Brinker*, 53 Cal. 4th at 1033, 1040. An employer fulfills its obligation if it "relinquishes control over the employee" for breaks. *Id.* at 1038-39.

California Named Plaintiffs' evidence shows that California Plaintiffs have no way to prove their claims with common evidence, and even if they did, individual issues would overwhelm the alleged common issue.

## V.     The district court did not have the power to decide arbitrability.

When KeyPoint moved to compel arbitration of the Arbitration Plaintiffs, the district court erred by itself determining whether the disputes in question were arbitrable when the Arbitration Agreement incontrovertibly delegated that decision to the arbitrator. Specifically, the district court erroneously disregarded the Arbitrator Decides Clause, which clearly and unmistakably delegates to the arbitrator "the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation" of the arbitration agreements in question. *See* App. Vol. III at 611 (quoting contract language), 613-14 (decision); *see also, e.g.*, App. Vol. II at 325 (agreement).

---

[12] This analysis is also consistent with the Ninth Circuit's observation that "*Brinker*'s holding, that an employer must provide meal breaks but 'need not ensure that no work is done,' does not weigh in favor of" certifying meal and rest break claims. *Flores v. Supervalu, Inc.*, 509 F. App'x 593, 595 (9th Cir. 2013) (citation omitted).

Supreme Court and Tenth Circuit precedent is firm that parties to an arbitration agreement can delegate threshold issues of arbitrability so long as the agreement is clear and unmistakable. *E.g.*, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). As this Court emphasized, "the question of *who* should decide arbitrability precedes the question of *whether* a dispute is arbitrable." *Belnap*, 844 F.3d at 1281. Moreover, consistent with prior Tenth Circuit precedent, *see id.* at 1286, the Supreme Court abrogated the "wholly groundless" exception to clear and unmistakable delegations of gateway questions. *Henry Schein*, 139 S. Ct. at 528-29. Therefore courts must enforce such delegations even if they believe them to be wholly groundless, frivolous, or a waste of time and money. *Id.* at 529-530.

The language of the Arbitrator Decides Clause in this case is enforceable. It is essentially ***identical*** to the delegation clause the Supreme Court enforced in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 66 (2010).[13]

Because the Arbitrator Decides Clause is enforceable, the only other question is whether the delegation includes interpretation of the Pending Litigation Exception. The answer is yes. The Arbitration Plaintiffs here agreed that the arbitrator has the exclusive authority to decide, among other things, the ***applicability***

---

[13] The *Rent-A-Center* clause added an immaterial "including, but not limited to" portion about voidability.

of the agreement. The Pending Litigation Exception addresses a situation where the agreement "does not *apply*." The Pending Litigation Exception explicitly deals with whether the Arbitration Agreement applies, and—just as in *Rent-A-Center*—the Arbitrator Decides Clause clearly and unmistakably gives the arbitrator the sole power to decide applicability. What was clear and unmistakable in *Rent-A-Center* is equally clear and unmistakable in this case: the district court possessed "no power" to decide arbitrability. *See Henry Schein*, 139 S. Ct. at 529.

Moreover, the Court must enforce the delegation provision under *Rent-A-Center* because Brayman did not specifically challenge it. The district court's order declining to enforce the Arbitrator Decides Clause relied upon its earlier December 16, 2019 order. App. Vol. III at 613-14. In turn, the earlier order acknowledged that Plaintiffs *entirely ignored* KeyPoint's argument as to delegation. App. Vol. I at 177-78. Plaintiffs' failure to address the argument should have been the end of the inquiry. Unless a party challenges a delegation provision specifically, the court "must treat it as valid under [FAA] § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center*, 561 U.S. at 72. Therefore, the district court should not have considered the issue in the first place, and should not thereafter have relied on that first decision in denying KeyPoint's motion to compel arbitration. *See Novic v. Credit One Bank, N.A.*, 757 F. App'x 263, 267 (4th Cir. 2019) (reversing district court where the plaintiff failed to

challenge the delegation clause specifically and because the clause clearly and unmistakably delegated arbitrability).

Having taken it upon itself to consider the delegation provision even though Brayman did not specifically challenge it, the district court disregarded the Arbitrator Decides Clause for three reasons. None of those reasons suffices to overcome the precedent mandating that the clause be applied.

First, quoting its own earlier order, the district court said any arbitration clause would have to be highly specific and explicit in order to convince the court that the parties intended that arbitration "would be the necessary gateway to invoking the Pending Litigation Exception (effectively making the Exception a farce)[.]" App. Vol. III at 613-14 (quoting App. Vol. I at 178). This is error because, as discussed above, the Supreme Court ruled that substantively identical language constitutes a clear and unmistakable delegation, the parties here agreed to delegate issues of applicability, and the whole crux of the Pending Litigation Exception is whether or not the Arbitration Agreement applies. This is sufficiently clear, and nothing more was required.

Second, also referring back to its earlier order, the district court disregarded the Arbitrator Decides Clause on the basis that the arbitrator does not have the power to interpret the district court's own orders. *Id.*; *see also* App. Vol. III at 614 ("Moreover, an arbitrator would be forced to resolve disputes regarding the meaning

of the Court's prior order interpreting the Pending Litigation Exception."). This rationale erroneously interprets the interplay among the district court's class-certification and collective-certification orders, the Pending Litigation Exception, and the Arbitrator Decides Clause. First of all, the district court did not have the power to interpret the Pending Litigation Exception in the first place, so whether any arbitrator would be required to resolve disputes about the court's *ultra vires* interpretation is of no consequence. As to class and FLSA-collective orders, there is no question that the district court may interpret and clarify its own rulings—in this instance the scope of the certified FLSA collective action and later the certified Rule 23 class. But whether the Pending Litigation Exception applies to members of the Rule 23 class is delegated to the arbitrator. In other words, the district court properly determines whether someone is part of the certified class or FLSA collective, but whether the Pending Litigation Exception applies and that person's claims are subject to arbitration is for the arbitrator.

Third, the district court explained that an alternate ruling—i.e., applying the Arbitrator Decides Clause and compelling arbitration—would require all 31 California Plaintiffs to arbitrate arbitrability, potentially leading to 31 different rulings. The district court did not cite any authority for the conclusion that avoiding this possibility provided a basis for the court to decide the issue, and KeyPoint is not aware of any. In fact, caselaw indicates just the opposite. For example, the district

court's rationale is contrary to the Supreme Court's requirement to "rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation[.]" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Indeed, the Supreme Court has repeatedly enforced arbitration agreements calling for individualized (not class) arbitrations, despite the obvious potential for such individual arbitrations to reach different results. *E.g.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018).

In sum, the Arbitrator Decides Clause is substantively identical to the clause in *Rent-A-Center* and it should be enforced just as the Supreme Court enforced its near mirror image in that case. Indeed, the Court "must" enforce the clause because Brayman did not specifically challenge it.

## VI. California class members who signed before January 13, 2020 are required to arbitrate because the Pending Litigation Exception does not apply to them.

The district court also erred by ruling that the Pending Litigation Exception applied to the Arbitration Plaintiffs who signed the Arbitration Agreement after March 8, 2018 (the date of the original complaint) but before January 13, 2020 (when Plaintiffs moved to amend the complaint).

All of the Arbitration Plaintiffs subject to the motion to compel arbitration executed their Arbitration Agreements before Plaintiffs moved to amend their Complaint to add California claims. App. Vol. II at 314-478; App. Vol. II at 557. The Pending Litigation Exception applies only to "currently pending litigation."

Although the meaning of this provision is reserved for the arbitrator, the contract must be applied based on the plain meaning of these terms. *E.g.*, *Weitz Co., LLC v. Mid-Century Ins. Co.*, 181 P.3d 309, 313 (Colo. App. 2007).

As a preliminary matter, it is of no consequence that Plaintiffs' new state-law claims relate back to the date of the original complaint. The relation-back doctrine is a procedural device provided by the Federal Rules of Civil Procedure to excuse the untimeliness of claims that are sufficiently related to timely pled claims. *See* Fed. R. Civ. P. 15(c). The relation-back doctrine is primarily concerned with the statute of limitations. *See* Fed. R. Civ. P. 15 Advisory Committee's note ("Relation back is intimately connected with the policy of the statute of limitations."). It is not a principle of contract interpretation, and it has no bearing on the meaning or scope of the parties' Arbitration Agreements.

With respect to Plaintiffs' original claims, the district court ruled that the Pending Litigation Exception applies for individuals who signed the Arbitration Agreement on or after March 8, 2018. KeyPoint does not challenge that ruling. But Plaintiffs' California claims were not—could not possibly have been—"currently pending" until January 13, 2020. Before that, they simply did not exist. Likewise, the Arbitration Plaintiffs could not possibly have been "current or purported" members of a Rule 23 class that did not exist (even putatively) at the time they signed their Arbitration Agreements. There simply was no purported California Rule 23

class until January 13, 2020. Accordingly, the Arbitration Plaintiffs must arbitrate their claims, and any Rule 23 class cannot contain individuals who signed the Arbitration Agreement before January 13, 2020.

In an attempt to avoid their Agreements, Plaintiffs would rewrite the Pending Litigation Exception to say that if an employee has ***any*** litigation pending at the time they sign—or may be part of any class or collective action, even uncertified actions—then ***all*** conceivable claims by that employee fall outside the scope of the Agreement. However, the plain language of the Agreements forecloses this interpretation. The Agreement provides, in relevant part, as follows:

> [T]his Agreement does not apply to any ***currently pending litigation*** between Employee and KeyPoint as of the date this Agreement is signed by Employee, and this Agreement does not apply to any class, collective, or other representative action proceeding that is ***currently pending*** and ***to which you are a current or purported class member as of the day this Agreement is signed*** by Employee.

App. Vol. II at 325 § 2 (emphasis added). The provision plainly requires an analysis of the litigation "currently pending . . . as of the date [the] Agreement is signed." As for class or collective actions, the provision is confined to proceedings "currently pending" ***and*** to which an employee is "a current or purported class member" as of the day the Agreement is signed. The language of the Agreement does not support the district court decision that pending federal claims can somehow bring within the scope of the exception the myriad unalleged claims—even other class or collective

claims—that may be asserted by any individual Plaintiff (or subset of Plaintiffs) at any later time.

Rather, the only way to apply these provisions to determine the scope of litigation "currently pending" and the scope of any class or collective to which he or she may be a member in this action is to examine Plaintiffs' complaint as of the day each Arbitration Plaintiff executed his or her Agreement. It is undisputed that, on the date each Arbitration Plaintiff signed his or her Agreement, no currently pending litigation contained California state-law claims, and no Plaintiff was a current or purported member of any Rule 23 class action alleging California state-law claims. The District Court erred when it interpreted the Pending Litigation Exception and its incorrect interpretation compounded the error.

## CONCLUSION

Although this case presents two distinct, consolidated appeals, a common thread connects them: the district court disregarded binding precedent in deciding both Plaintiffs' motion for Rule 23 class certification and KeyPoint's motion to compel arbitration. On class certification, the district court erroneously credited the pleadings, disregarded KeyPoint's evidence, and thereby failed to conduct the necessary rigorous analysis. Considered under the proper standards, California Named Plaintiffs failed to carry their burden under Rule 23. Similarly, the district court disregarded the Supreme Court's decision in *Rent-A-Center* and erroneously

interpreted the application of the Arbitration Agreement, despite a clear and unmistakable delegation to the arbitrator. Both decisions are erroneous and both decisions should be reversed.

WHEREFORE, KeyPoint respectfully requests that this Court reverse the decisions of the district court, and direct the district court to enter an order (1) denying class certification under Rule 23, and (2) compelling the 31 California plaintiffs to arbitrate their state-law claims.

## ORAL ARGUMENT STATEMENT

KeyPoint respectfully submits that oral argument is necessary in light of the voluminous factual record on the Rule 23 portion of the appeal, the relatively long and detailed procedural history related to both portions of the appeal, and the important and significant class-certification issues that warranted Rule 23(f) interlocutory appeal in the first place.

Dated: July 20, 2022.

Respectfully submitted,

*s/ Margaret Parnell Hogan*
Margaret Parnell Hogan
Jennifer S. Harpole
Thomas W. Carroll
LITTLER MENDELSON, P.C.
1900 16th Street, Suite 800
Denver, CO 80202
Telephone: 303.629.6200
Facsimile: 303.629.0200

Email: mphogan@littler.com
        jharpole@littler.com
        tcarroll@littler.com

Jacqueline E. Kalk
LITTLER MENDELSON, P.C.
80 South 8th Street, Suite 1300
Minneapolis, MN  55402
Tele: 612.313.7645
Fax: 612.677.3139
Email: jkalk@littler.com

Everett Clifton Martin
LITTLER MENDELSON, P.C.
633 West Fifth Street
Los Angeles, CA  90071
Tele: 213-443-4212
Fax: 213-443-4299
Email: cmartin@littler.com

*Attorneys for Defendant-Appellant KeyPoint
Government Solutions, Inc.*

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 11,959 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(B).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point type.

Dated: July 20, 2022.

*s/ Margaret Parnell Hogan*
Margaret Parnell Hogan
Jennifer S. Harpole
Thomas W. Carroll
LITTLER MENDELSON, P.C.
1900 16th Street, Suite 800
Denver, CO  80202
Telephone: 303.629.6200
Facsimile: 303.629.0200
Email: mphogan@littler.com
      jharpole@littler.com
      tcarroll@littler.com

*Attorneys for Defendant-Appellant KeyPoint Government Solutions, Inc.*

## CERTIFICATE OF DIGITAL SUBMISSION

Undersigned counsel certifies that:

1.      No privacy redactions were necessary.

2.      Every document submitted electronically is an exact copy of the written document to be submitted to the clerk's office.

3.      The digital submission has been scanned for viruses with the most recent version of a commercial virus-scanning program (Windows Defender, Antivirus Version 1.371.487.0, last updated July 20, 2022) and, according to the program, is free of viruses.

Dated: July 20, 2022.

*s/ Margaret Parnell Hogan*
Margaret Parnell Hogan
Jennifer S. Harpole
Thomas W. Carroll
LITTLER MENDELSON, P.C.
1900 16th Street, Suite 800
Denver, CO  80202
Telephone: 303.629.6200
Facsimile: 303.629.0200
Email: mphogan@littler.com
        jharpole@littler.com
        tcarroll@littler.com

*Attorneys for Defendant-Appellant KeyPoint Government Solutions, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of July, 2022, I electronically filed the

foregoing Defendant-Appellee's Opening Brief using the court's CM/ECF system,

which will send notification of such filing to the following:

Rachhana T. Srey
Caroline Elizabeth Bressman
H. Clara Coleman
NICHOLS KASTER, PLLP
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
srey@nka.com
cbressman@nka.com
ccolemanb@nka.com
Daniel S. Brome
Matthew Helland
NICHOLS KASTER, PLLP
234 Montgomery Street, Suite 810
San Francisco, CA 94104
dbrome@nka.com

Benjamin L. Davis, III
George E. Swegman
Kelly Anne Burgy
THE LAW OFFICES OF PETER T. NICHOLL
36 South Charles Street, Suite 1700
Baltimore, MD 21201
bdavis@nicholllaw.com
gswegman@nicholllaw.com
kaburgy@nicholllaw.com

*s/ Margaret Parnell Hogan*

4885-9685-6605.14